UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:08-cr-23 |
| v. ) | |
| ) | Judge Mattice |
| WILLIAM HORACE (BILLY) LONG ) | |

## MEMORANDUM AND ORDER

This criminal prosecution came about as the result of an investigation, including a so-called reverse sting operation, conducted by the Federal Bureau of Investigation over an approximately ten month period from April of 2007 to February of 2008. On the last day of the operation, the Defendant, William Horace (Billy) Long, who was then serving as the duly-elected Sheriff of Hamilton County, Tennessee, was arrested pursuant to a criminal complaint [Court Doc. 1]. A twenty-eight count indictment was returned by the federal grand jury on February 26, 2008, charging Mr. Long with nineteen counts of extortion pursuant to 18 U.S.C. § 1951, six counts of money laundering pursuant to 18 U.S.C. § 1956(a)(3)(A), one count of providing a firearm and ammunition to a felon pursuant to 18 U.S.C. § 922(d), one count of possessing a controlled substance with the intent to distribute pursuant to 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), and one count of possessing a firearm in furtherance of a drug trafficking offense pursuant to 18 U.S.C. § 924(c)(1)(A)(I) [Court Doc. 8].

On May 5, 2008, pursuant to a plea agreement with the government, Mr. Long entered guilty pleas to twenty-seven of the twenty-eight counts of the indictment. Sentencing is currently set for November 19, 2008, and Mr. Long has filed a number of motions in advance of his sentencing hearing. Among them, and presently before the

Court, are Defendant's Motion for Subpoenas Duces Tecum [Court Doc. 26] and Motion for Psychological Examination of Government Witness [Court Doc. 27]. The subject of these motions is the psychological condition of the government's cooperating witness in this matter, Mr. Clarence Eugene Overstreet.

For the reasons discussed below, both motions will be **DENIED**.

**I.      MOTION FOR PSYCHOLOGICAL EXAMINATION OF GOVERNMENT WITNESS**

In his Motion for Psychological Examination of Government Witness, Mr. Long asks the Court to order the cooperating witness to submit to a number of psychological tests. (Court Doc. 27 at 1.) In deciding whether to order a psychological evaluation, the Court must weigh the movant's interest in the results of the examination against the infringement on the witness's privacy, the opportunity for harassment, and the possibility that an examination will hamper law enforcement by deterring witnesses from coming forward. *United States v. Raineri*, 670 F.2d 702, 709 (7th Cir. 1982).

Mr. Long claims that a psychological evaluation of the cooperating witness is necessary to assist with his claims of sentencing entrapment, sentencing manipulation, and outrageous conduct. (Court Doc. 28 at 2; Court Doc. 51 at 3.) The United States Court of Appeals for the Sixth Circuit has neither expressly adopted nor disavowed consideration of the doctrines of sentencing entrapment, sentencing manipulation or outrageous conduct. *See, e.g., United States v. Watkins*, 179 F.3d 489, 503 n.14 (6th Cir. 1999) ("We note that this court has yet to acknowledge that sentencing entrapment, even if proven, constitutes a valid basis for a downward departure."); *United States v. Landers*, 58 Fed. App'x 108, 110 (6th Cir. 2003) ("the Sixth Circuit has yet to adopt the concept of 'sentencing

-2-

Case 1:08-cr-00023-HSM-SKL   Document 79   Filed 10/23/08   Page 2 of 10   PageID #: 1231

manipulation,' or the continued purchase of illicit drug quantities so as to drive up the sentencing exposure of the defendant."); *Sosa v. Jones*, 389 F.3d 644, 649 (6th Cir. 2004) (including "outrageous government conduct" as an element of sentencing entrapment). The Court will assume, without deciding, and solely for the purpose of ruling on the instant motions, that it will be permitted to consider these doctrines in determining Mr. Long's sentence.[1]

Sentencing entrapment relates to an individual's predisposition and focuses on the propensity of the defendant to commit his actual crime as opposed to some lesser crime. Joan Malmud, *Defending a Sentence: The Judicial Establishment of Sentencing Entrapment and Sentencing Manipulation Defenses*, 145 U. Pa. L. Rev. 1359, 1372 (1997). The Sixth Circuit has defined sentencing entrapment in the context of a drug offense as "outrageous official conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs and the resulting sentence of the entrapped defendant." *Biggs v. United States*, 3 Fed. App'x 445, 448 (6th Cir. 2001).

Mr. Long has submitted to a psychological examination and the results of that examination have been provided to the Court. Because sentencing entrapment focuses almost exclusively on the qualities and characteristics of the defendant, however, the Court is unable to discern how a psychological evaluation of the cooperating witness would further Mr. Long's sentencing entrapment argument.

---

[1] The Court wishes to make abundantly clear that this assumption is not a reflection or indication of how the Court might rule on the applicability of the doctrines of sentencing entrapment, sentencing manipulation or outrageous conduct at Mr. Long's sentencing hearing.

The doctrine of sentencing manipulation provides that a defendant should not be sentenced as heavily as the sentencing guidelines recommend because the government acted outrageously or improperly for the sole purpose of increasing the defendant's sentence. Malmud, *supra*, at 1373. The cases involving sentencing manipulation focus on the government's actions and its motivation for those actions. *See*, *e.g.*, *United States v. Cannon*, 88 F.3d 1495, 1507 (8th Cir. 1996) (examining acts of government agents for outrageous conduct).

With regard to the actions of the government, videotapes and audiotapes depicting or recording the commission of some of the crimes to which Mr. Long has pled guilty have been submitted to the Court. The tapes allow the Court to personally view and/or hear the interaction between the cooperating witness and Mr. Long and to evaluate that interaction for outrageous conduct. As an alternative to ordering a psychological examination of the cooperating witness, Mr. Long asks that the Court "takes the defendant's allegations as to [the cooperating witness's] manipulative abilities as true, when considering the defendant's motions on the issues of sentencing entrapment and sentencing factor manipulation." (Court Doc. 27 at 5.) The Court declines this invitation, but will instead view the videotapes and listen to the audiotapes and make its own independent assessment of the cooperating witness's persuasive and manipulative abilities.

As to the motivation aspect of sentencing manipulation, the relevant inquiry is into the *government's* motivation for taking certain actions. *United States v. Calva*, 979 F.2d 119, 122-23 (8th Cir. 1992). The government readily admits that it instructed the cooperating witness to lie and deceive Mr. Long for the purposes of testing "how far the

defendant would go." (Court Doc. 35 at 3.) Any personal agenda or subjective motivation which may have been in the mind of the cooperating witness is irrelevant. Accordingly, the Court also does not see how a psychological evaluation of the cooperating witness would further Mr. Long's sentencing manipulation argument.

The doctrine of outrageous conduct, as applied to sentencing, is closely connected to the doctrines of both sentencing entrapment and sentencing manipulation.[2] *See United States v. Eaton*, 260 F.3d 1232, 1239, n.4 (10th Cir. 2001) ("'Outrageous governmental conduct' is the same concept as 'sentencing entrapment.'"); *United States v. Gagliardi*, 506 F.3d 140, 148 (2nd Cir. 2007) (noting that showing outrageous government conduct is an element of sentencing manipulation). Because, as discussed above, the Court finds that a psychological evaluation of the cooperating witness would not further either Mr. Long's sentencing entrapment or sentencing manipulation defenses, the same conclusion must be drawn with regard to the defense of outrageous conduct.

Mr. Long argues that the psychological evaluation is necessary "in order to determine if [the cooperating witness] is an antisocial personality or psychopath and to determine if his personality style allows him to know a truth from a lie and allows him to understand an objective reality." (Court Doc. 27.) As discussed above, the personality traits and psychological characteristics of the cooperating witness are not material to the

---

[2] The Court notes that there is a separate legal doctrine that has not been raised in this case called "outrageous governmental conduct" and stands for the proposition that the government's conduct was so egregious that it violated due process. *United States v. Russell*, 411 U.S. 423, 431-32 (1973). This doctrine acts as a bar to the conviction of a defendant; it is not a defense to sentencing. *Id. See also United States v. Bussell*, 226 Fed. App'x 393, 396-9 (6th Cir. 2008) ("Normally, outrageous governmental conduct is framed as a defense to criminal charges by which a 'defendant argues that the government's involvement in creating his crime (i.e., the means and degrees of inducement) was so great that a criminal prosecution for the crime violates the fundamental principles of due process.'") (citing *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999)(internal quotations omitted)).

Court's determination of the applicability of the doctrines of sentencing entrapment, sentencing manipulation or outrageous conduct.

Mr. Long points the Court to 18 U.S.C. § 3661, which provides that: "[n]o limitation should be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." While this statute certainly allows the Court to consider any information provided to it, the statute plainly states that the Court "*may* receive and consider" information. Congress's choice of verbiage clearly indicates that it intended the statute to be permissive rather than mandatory. *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784 n.1 (6th Cir. 2003) ("we assume that 'may' is using its 'common-sense' permissive definition unless the context of the statute suggests otherwise.") Nothing in the statute *requires* the Court to receive and consider information that the Court deems to be largely irrelevant, such as a psychological evaluation of the cooperating witness in this case. *United States v. Tillman*, 25 F.3d 1052 (Table), 1994 WL 198165, *3 (noting that a district court has "discretion to consider a broad range of information"). As has been noted by the United States Supreme Court, "§ 3661 does not speak to questions concerning the relevance or the weight of any item of evidence." *United States v. Watts*, 519 U.S. 148, 160-61 (1997) (Stevens, J. dissenting).

Beyond the particular doctrines relied upon by Mr. Long in his papers, the Court recognizes that, as commanded by Congress in 18 U.S.C. § 3553(a)(1), in fashioning an appropriate sentence, it must take into account "the nature and circumstances of the

-6-

Case 1:08-cr-00023-HSM-SKL   Document 79   Filed 10/23/08   Page 6 of 10   PageID #: 1235

offense, and the history and characteristics of the defendant." Post-*Booker*,[3] the United States Sentencing Guidelines are advisory rather than mandatory, and the Court is no longer confined to merely granting or denying motions for variance or departure as means of determining an offender's sentence. Instead the Court is guided by § 3553 and will consider *all* appropriate factors (including but not limited to the fact that some of Mr. Long's offenses were committed in the context of a government reverse-sting operation) at sentencing. The Court further acknowledges that many of the materials which have been submitted to it, including Mr. Long's psychological evaluation, may well assist the Court in fashioning an appropriate sentence in this case. Here again, however, the Court cannot discern how a psychological evaluation of the government's cooperating witness would assist it in this regard.

The Court has not been cited to, nor has it been able to locate, any precedent for the action sought by Mr. Long here. Even in the jurisdictions which have formally adopted and consistently applied the doctrines of sentencing entrapment, sentencing manipulation, and outrageous conduct, the Court cannot identify a single instance in which the psychological evaluation of a cooperating witness has been ordered. In fact, Mr. Long admits that his motion "may be a novel request at this stage of the proceedings" and that there is no precedent either in favor of or opposed to granting it. (Court Doc. 51 at 8.)

In sum, the Court finds that the relevance of any information that might result from a psychological evaluation of the government's cooperating witness would be, at best, of highly questionable value to the Court in fashioning an appropriate sentence in this case.

---

[3] *United States v. Booker*, 543 U.S. 220 (2005).

-7-

Case 1:08-cr-00023-HSM-SKL   Document 79   Filed 10/23/08   Page 7 of 10   PageID #: 1236

Accordingly, the Court concludes that Mr. Long's need for a psychological evaluation of the cooperating witness does not outweigh the cooperating witness's privacy, the opportunity for harassment, and the possibility that an examination will hamper law enforcement by deterring witnesses from coming forward in the future.[4] Mr. Long's Motion for Psychological Examination of Government Witness [Court Doc. 27] is **DENIED**.

## II.   MOTION FOR SUBPOENAS DUCES TECUM

Mr. Long has also filed a Motion for Subpoenas Duces Tecum [Court Doc. 26] asking the Court to issue subpoenas duces tecum for past psychological or psychiatric records of the cooperating witness. Mr. Long also requests that the Court order the government to provide the necessary information for obtaining such records.

In determining whether to allow a defendant to subpoena a witness's medical records, the Court must weigh the witness's right to privacy with regard to his medical records against the defendant's need for the information contained therein. *See In re Zuniga*, 714 F.2d 632, 642 (6th Cir. 1983). As discussed above, the psychological condition of the government's cooperating witness at the time of the offense is of only minimal, if any, relevance to these proceedings. The cooperating witness's psychological and psychiatric records, which by their nature would show only his past state of mind, are even less relevant. Accordingly, the cooperating witness's privacy rights outweigh Mr. Long's need for the records and Mr. Long's Motion for Subpoenas Duces Tecum [Court Doc. 26] is also **DENIED**.

---

[4] Even were the Court to conclude that the balance tipped in favor of Mr. Long, there are substantial legal questions regarding whether the Court even *could* order a non-party witness to submit to a psychological examination. *United States v. Ramirez*, 871 F.2d 582, 584-85 (6th Cir. 1989) ("[T]he court cannot *order* a non-party witness to be examined by a psychiatrist. The most the court could do is condition such witness's testimony on a prior examination.")

## III. CONCLUSION

Before it accepted Mr. Long's guilty plea in this matter, it was necessary for the Court to make an independent judgment as to whether the factual basis agreed upon by the parties demonstrated that the government could prove all necessary elements of the involved offenses, including the *mens rea* elements. Moreover, based on his guilty pleas, and given that Mr. Long is represented by very experienced counsel in this case, the Court must assume that Mr. Long consciously considered, and decided to forego, the assertion of any affirmative defenses to the admitted criminal offenses, including but not limited to the well-recognized substantive defense of entrapment.[5] Under these circumstances, the Court – as in all criminal cases in which it accepts a guilty plea – treats Mr. Long's guilt as having been finally established. *See, e.g., United States v. Broce, et al.,* 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.")

---

[5] At the August 15, 2008 hearing in this matter, counsel for Mr. Long admitted that Mr. Long has chosen to forgo any defense of legal entrapment. (Tr. at 18.)

-9-

All that remains to be done in this case is for the Court to fashion an appropriate sentence for Mr. Long's admitted crimes. While the factors which the Court may take into account in fashioning such a sentence are wide-ranging, and the parameters of the Court's inquiry broad, those factors and that inquiry do not permit the Court to absolve Mr. Long of responsibility for his conduct, or to shift the blame for that conduct to a third party such as, in this case, the government's cooperating witness. The law requires that the legal responsibility for his admitted crimes be attributed to, and remain with, Mr. Long.[6]

SO ORDERED this 23rd day of October, 2008.

/s/Harry S. Mattice, Jr.
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[6] "The fault, dear Brutus, is not in our stars, but in ourselves . . . ." W. Shakespeare, *Julius Caesar*, Act I, sc.2.